IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 14-cr-00396-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DELANO MARCO MEDINA,

      Defendant.

_____

## ORDER

_____

      This matter comes before the Court on defendant's Combined Motion for the United States to Specify What Discovery it Intends to Use at Trial and for the Defense to Be Provided with the Grand Jury Transcripts [Docket No. 98], Motion for Compliance with the Interstate Agreement on Detainers Act [Docket No. 100], Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 103], Motion to Set Deadlines and for Updated Status on Previous Filed Motions [Docket No. 113], and Motion to Adopt All Previous Filed Pro Se Motions [Docket No. 116].  These motions were filed pro se and, accordingly, the Court will liberally construe defendant's motions to determine if they can be "reasonably read . . . to state a valid claim on which [defendant] could prevail." *United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007) (internal quotation marks omitted).

## I.  BACKGROUND

      Mr. Medina has been convicted of various crimes in state court and is currently

serving a lengthy sentence in the Colorado Department of Corrections ("CDOC"). Docket No. 19 at 1 ("I have been sentenced to the Colorado Department of Corrections to a term of forty four (44) years since August 11th 2015 from Jefferson County case 14-CR-304."); *see also* Docket No. 38 at 4.

The indictment in this case was returned on October 7, 2014. Docket No. 1. An arrest warrant issued the same day. Docket No. 2. By letter to Jefferson County Sheriff Ted Mink dated March 26, 2015, Mr. Medina requested that Mr. Mink "give notice" to the various jurisdictions where cases were pending against Mr. Medina that he was "requesting speedy trial of any warrants/detainers forthwith." Docket No. 55-2; *see also* Docket No. 55 at 2. By letter to the Clerk of this Court, dated March 29, 2015 and filed April 2, 2015, Mr. Medina requested the address of the Court and the U.S. Attorney's office "[i]n order to properly file motions." Docket No. 5. On April 9, 2016, the United States filed a petition for a writ of habeas corpus ad prosequendum directed to the Denver Reception & Diagnostic Center, but it was returned unexecuted on May 26, 2015. Docket Nos. 6-10.

A superseding indictment was returned on June 9, 2015, which charges the defendant with fifteen counts, including possession of firearms by a prohibited person, mail theft, bank fraud, and aggravated identity theft. Docket No. 11. The United States filed a petition for a second writ of habeas corpus ad prosequendum, directed to the Mesa County Detention Facility, on June 12, 2015. Docket No. 15. The writ issued on July 31, 2015, Docket Nos. 17-18, but there is no evidence it was executed.

On December 29, 2016, defendant filed a pro se motion arguing that his Sixth Amendment right to a speedy trial and rights under the Interstate Agreement on

Detainers, 18 U.S.C. App. 2 ("IAD"), had been violated. Docket No. 19. On January 3, 2017, the United States filed a petition for a third writ of habeas corpus ad prosequendum, directed to the Colorado Territorial Correctional Facility, and the writ issued the same day. Docket Nos. 20-23. On January 11, 2017, defendant made his initial appearance and a Federal Public Defender was appointed. Docket Nos. 25, 27, 28. Despite being represented by counsel, defendant filed several pro se motions. *See* Docket Nos. 41, 42, 43. The Court struck the pro se motions as improper. Docket No. 44.

On January 31, 2017, defendant, through counsel, requested an ends of justice continuance so that counsel could prepare for trial. Docket No. 38. On February 6, 2017, without holding a hearing, the Court granted defendant's request to exclude 180 days from the Speedy Trial Act period and set the trial to begin on October 2, 2017. Docket No. 40.

Defendant filed a pro se objection to the trial continuance, arguing that it was prejudicial to his Sixth Amendment right to a speedy trial. Docket No. 45 at 1, 4. Defendant also moved to proceed pro se. Docket No. 47. On February 22, 2017, the Court held a hearing on these two motions. Docket No. 49. At the hearing, defendant stated that he agreed with his counsel that a trial continuance was necessary, but he did not think it needed to be so long and he worried it would be prejudicial to his right to a speedy trial under the Sixth Amendment, which he claimed had already been violated. Docket No. 102 at 16, 16:2-19. The Court proposed denying defendant's motions without prejudice and allowing the defendant to expedite his Sixth Amendment speedy trial challenge, a proposal that Mr. Medina agreed to. *Id*. at 21-23, 21:12-23:23. The

Court denied defendant's objection to the trial continuance and his motion to proceed pro se without prejudice. Docket No. 49 at 2.

At a hearing on April 25 and 27, 2017, Mr. Medina advised the Court that he wished to represent himself. Docket No. 67. The Court granted defendant's request and appointed advisory counsel. Docket No. 69 at 2.

Defendant has filed numerous pro se motions. Docket Nos. 41-43, 47, 61-65, 68, 72, 73-75, 76, 87, 90, 91, 94-100, 103, 110, 113, 116, 121-22. The Court has ruled on many of these motions, Docket Nos. 44, 49, 66, 69, 84, 112, and set deadlines for the United States to respond to others. Docket Nos. 101, 117, 118.

## II. DISCUSSION

The Court will take up the instant motions, Docket Nos. 98, 100, 103, 113, 116, in the order that they were filed.

### A. Docket No. 98 - Combined Motion

#### 1. Motion for Identification of Discovery

Defendant claims that he has received "an excessive amount of discovery" and "needs to be able to distinguish what portions apply to him and what portions apply to his Brother to ensure there is not a misidentification or false evidence presented against [him]." Docket No. 98 at 1., ¶ 1. The United States responds that it "will identify the exhibits it intends to use at trial pursuant to the Court's Practice Standards." Docket No. 105 at 2.

This Court's practice standards require the parties to submit exhibit lists two business days before the trial preparation conference. Practice Standards (Criminal

cases), Judge Philip A. Brimmer § IV.A.2.  Accordingly, the parties' exhibit lists are due September 22, 2017, with trial set to start October 2, 2017.  *See* Docket No. 40.  The Court finds that defendant has not shown good cause to modify the deadline for the parties to disclose their exhibit lists or otherwise require the United States to identify specific discovery it intends to rely on.  *Cf.* Fed. R. Crim. P. 45(b)(1).  Notably, defendant does not claim that he needs the United States to specify what evidence it intends to use at trial in order that he can file a motion to suppress.  *See* Fed. R. Crim. P. 12(b)(4)(B) ("the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence").[1]  Moreover, it is unclear how defendant's stated aim of ensuring that evidence pertaining to his brother is not used against him would be furthered by the United States identifying the evidence it intends to use at trial.  Although such identification could narrow the pool of evidence defendant would have to consider, he would still have to determine whether he believed the identified documents referred to his brother.  The government's identification of the documents it intends to use would not increase defendant's ability to make such a determination, and he does not argue that he is incapable of making the determination.  *See* Docket No. 98 at 1, ¶ 1.  The Court will deny Mr. Medina's request.

### 2.  *Motion for Grand Jury Transcripts*

Defendant also requests transcripts from the grand jury proceedings.  Docket

---

[1] Indeed, defendant has already filed two motions to suppress that are unrelated to whether any of the documents provided in discovery pertain to his brother, instead of defendant.  *See* Docket Nos. 94, 96.

No. 98 at 1-2.[2]  The United States does not oppose this request, Docket No. 105 at 2,

and moved to have such transcripts released to defendant.  Docket No. 106.  On June

6, 2017, the Court granted the United States' motion authorizing the release of grand

jury materials to defendant.  Docket No. 109 at 1.  Therefore, this request for relief is

moot.

### B.   Docket Nos. 100 and 103 - Interstate Agreement on Detainers

The Court addresses these two motions together because they both request

dismissal under the IAD.

The IAD is a "compact entered into by 48 States, the United States, and the

District of Columbia to establish procedures for resolution of one State's outstanding

charges against a prisoner of another State."  *N.Y. v. Hill*, 528 U.S. 110, 111 (2000)

(citations omitted).  The United States is defined as a "State" under the IAD.  18 U.S.C.

App. 2 § 2, Art. II(a).  After a state brings charges against a prisoner in another state's

custody, it may file a detainer, which is a "request by the State's criminal justice agency

that the institution in which the prisoner is housed hold the prisoner for the agency or

notify the agency when release is imminent."  *Hill*, 528 U.S. at 112 (citing *Fex v.*

*Michigan*, 507 U.S. 43, 44 (1993)).  The state holding the detained prisoner, here

Colorado, is the "sending state," while the state that is seeking to try the prisoner, here

the United States, is the "receiving state."  18 U.S.C. App. 2 § 2, Art. II(b), (c).

The IAD imposes two trial deadlines on the receiving state – a 180-day deadline

---

[2] The United States interprets Mr. Medina's motion as also requesting grand jury
selection records.  Docket No. 105 at 3.  Although Mr. Medina cites statutes and
caselaw related to such requests, he does not request any such relief.  *See* Docket No.
98 at 2, ¶ 5.  Thus, the Court will not address the issue.

and a 120-day deadline.  *See* 18 U.S.C. App. 2 § 2.  A prisoner can compel a state that had lodged a detainer against him to try him by filing a "request for a final disposition to be made of the indictment, information, or complaint."  *Id*., Art. III(a).  Upon such a request, the prisoner "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint."  *Id*.  Additionally, regardless of whether the prisoner files a notice, when a prisoner is transferred subject to a detainer, "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State."  *Id*., Art. IV(c).  Both IAD periods are subject to a provision that, "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."  *Id*.; *see also* Art. III(a).  Generally, if either deadline is violated, the indictment must be dismissed with prejudice.  *Hill*, 528 U.S. at 112 (citing Art. V(c)) ("If a defendant is not brought to trial within the applicable statutory period, the IAD requires that the indictment be dismissed with prejudice.").  However, when the United States is the receiving state, dismissal may be without prejudice.  18 U.S.C. App. 2 § 9.

Defendant argues that he must be tried before the current October 2, 2017 trial date because it is more than 120 days after he was transferred into the custody of the United States and more than 180 days after he filed his December 29, 2016 pro se motion.  Docket No. 100 at 2; *see also* Docket No. 19.  Second, defendant argues that

the indictment against him must be dismissed under the IAD because he "substantially complied" with the requirements of the IAD when he sent a letter to Sheriff Mink on March 26, 2015 requesting that the Sheriff notify the various jurisdictions where Mr. Medina had pending cases that he requested a speedy trial. Docket No. 103 at 4; *see also* Docket No. 55-2.[3]

The government responds that the IAD 180-day clock only starts to run when the prosecutor and the Court actually receive notice that defendant was invoking his IAD speedy trial rights. Docket No. 108 at 4 (citing *Fex v. Michigan*, 507 U.S. 43, 52 (1993)). The government also argues that the Court properly continued the trial, which tolled the IAD deadlines. *Id*. at 4-5.[4]

The Court finds that the letter sent by the defendant to Sheriff Mink did not trigger the 180-day IAD period because it was not delivered to the prosecuting officer and the Court. *See* 18 U.S.C. App. 2 § 2, Art. III(a). Defendant cites two cases to argue that he did all that was necessary to comply with the IAD and trigger the 180-day period, but both cases are inapposite. First, *United States v. Reed*, 910 F.2d 621 (9th

---

[3] Defendant also refers to a letter to the Executive Director of the CDOC, Rick Raemisch, Docket No. 103 at 4, but a copy of the letter provided does not reference the IAD and contains no reference to this case. Docket No. 59-2 (referring to defendants state cases and the Uniform Mandatary Disposition of Detainers Act, a distinct statute from the IAD). Further, defendant provides no evidence that this letter was ever supplied to the prosecutor or the Court. *See* Docket No. 59-1 (responsive letter from the CDOC).

[4] The government argues that the Court should apply the tolling provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h), to the IAD consistent with the rule adopted by the Ninth Circuit in *United States v. Collins*, 90 F.3d 1420, 1426 (9th Cir. 1996), and certain other circuits. Docket No. 108 at 4 n.2. But the Tenth Circuit has yet to adopt such a rule, or adopt one of the approaches taken by another circuit.

Cir. 1990), and other cases providing exceptions to the IAD's requirement of actual delivery of a notice invoking the prisoner's IAD rights to the court and prosecutor, were overruled by the Supreme Court's decision in *United States v. Johnson*, 196 F.3d 1000, 1002 (9th Cir. 1999) ("However, since we decided *Reed*, the Supreme Court, in [*Fex*], has held that the 180-day period does not start until the speedy trial request is actually delivered to the court and the prosecutor.").  As the Tenth Circuit has recognized, "the Supreme Court specifically required actual delivery of a request to both the prosecutor and the court, and it refused to carve a 'fairness' exception to the express language of the IAD in cases in which a third party had negligently or maliciously prevented delivery from occurring."  *United States v. Washington*, 596 F.3d 777, 781 (10th Cir. 2010) (citing *Fex*, 507 U.S. at 50-52).  In the second case cited by defendant, *United States v. Zfaty*, 44 F. Supp. 2d 588, 591-92 (S.D.N.Y. 1999), the prisoner sent a letter to the "District Court and the United States Attorney's Office [that] identified the prisoner, his location, and the detainer at issue, and demanded to be arraigned as soon as possible."  The prisoner in *Zfaty*, unlike Mr. Medina, "substantively complied with the IAD's directive to 'deliver to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction . . . his request for a final disposition to be made of the indictment'" in order to trigger the 180-day period.  *Id*. (quoting 18 U.S.C. App. 2, § 2, Art. III(a)).  Mr. Medina did not provide notice to the Court and prosecuting officer that he was invoking his IAD rights until his December 29, 2016 filing.  *See* Docket No. 19.

The Court next turns to whether holding the trial on October 2, 2017 would violate defendant's rights under the IAD.  The IAD allows for "any necessary or

reasonable continuance" to be granted "for good cause shown in open court, the prisoner or his counsel being present, [by] the court having jurisdiction of the matter." *See* 18 U.S.C. App. 2 § 2, Art. III(a). The Court finds that the previously granted trial continuance satisfies these requirements.

Defendant, through counsel, requested a trial continuance due to the complexity of the "numerous distinct counts" involved, Docket No. 38 at 4, ¶ 11, and the volume of discovery. *Id*. at 3, ¶ 10. Thus, good cause existed when the trial continuance was granted and, as the Court noted in its June 22, 2017 order, "the reasons the Court gave for granting the ends of justice continuance remain relevant." Docket No. 112 at 9. The Court initially granted defendant's request for a continuance without a hearing, Docket No. 40, but then held a hearing addressing the trial continuance on February 22, 2017 after defendant filed his pro se objection. Docket No. 49. Both defendant and his counsel were present at the hearing. *Id*. The Court and the parties discussed the propriety of the trial continuance. Docket No. 102 at 14-23. Indeed, defense counsel reaffirmed that he would need a 180-day continuance to prepare for trial. *Id*. at 20, 20:13-21 ("My broader concern is if . . . the Court may . . . move the trial dates forward . . . it doesn't resolve my concern with being prepared within a shorter time frame than I had asked for because what I asked for was . . . what I thought in good faith I needed. I still think I need it. It wasn't an opening bid."). This supports the conclusion that the length of the trial continuance was reasonable.

Even if the continuance was not proper under the IAD, defendant waived his objection to the continuance under the IAD by not raising it previously. Neither defendant nor his counsel objected to the trial continuance on the basis of the IAD at

10

the hearing.  *See generally* Docket No. 102.  Nor did defendant's pro se objection to the

continuance reference the IAD.  *See* Docket No. 45.  Instead, both in his objection and

at the hearing, defendant focused on his right to a speedy trial under the Sixth

Amendment.  *Id.*[5]  Such a failure to object based on the IAD waived defendant's right to

later raise the issue.  *United States v. McIntosh*, 514 F. App'x 783, 795 (10th Cir. 2013)

(unpublished) ("A defendant may waive his IAD rights by agreeing to a trial date that is

later than the Agreement requires." (citing *Hill*, 528 U.S. at 118)).

To the extent defendant implicitly argues that he did not personally agree to the

trial continuance, by focusing on his pro se objection, such an argument has been flatly

rejected by the Tenth Circuit.  In *United States v. Margheim*, 770 F.3d 1312, 1319 (10th

Cir. 2014), the court explained,

> Mr. Margheim's suggestion that . . . he personally "did not consent to" the
> ends-of-justice continuance, Aplt. Opening Br. at 10, is legally untenable.
> On its face, the Act permits courts to grant continuances "at the request of
> the defendant *or his counsel*."  18 U.S.C. § 3161(h)(7)(A) (emphasis
> added).  The Supreme Court's guidance on trial management indicates
> that this provision does not require the defendant's personal
> acquiescence.  *See New York v. Hill*, 528 U.S. 110, 115, 120 S.Ct. 659,
> 145 L.Ed.2d 560 (2000) ("[When] a specified delay in trial . . . is under
> consideration, only counsel is in a position to assess the benefit or
> detriment of the delay to the defendant's case."); *Taylor v. Illinois*, 484
> U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("[T]he lawyer
> has—and must have—full authority to manage the conduct of the trial.

---

[5] For example, at the hearing defendant explained that his theory was based on
the Sixth Amendment:

THE COURT: Okay. Is your theory based upon the Speedy Trial Act?
THE DEFENDANT: No.
THE COURT: Okay. So is it based upon the Constitution?
THE DEFENDANT: Yes.

Docket No. 102 at 15, 15:16-21.

> The adversary process could not function effectively if every tactical decision required client approval.")  Consistent with that view, we have taken the position that whether an ends-of-justice motion has tolling effect depends on whether the court made the necessary findings, *not* whether the defendant gave his blessing to the continuance.  *See, e.g., United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013), *aff'd*, --- U.S. ----, 134 S.Ct. 2384, 189 L. Ed.2d 411 (2014); *Toombs*, 574 F.3d at 1269.  Thus, we need not—and do not—dwell on the particulars of Mr. Margheim's personal "consent" (or lack thereof) to the 120-day ends-of-justice continuance.

Indeed, Mr. Medina admitted that he discussed seeking a continuance with his counsel in advance, and agreed that a continuance should be sought, but was surprised by the length of the continuance requested.  Docket No. 102 at 16, 16:2-19 ("I agreed that a month or two, maybe even three, would be necessary . . ., but we didn't set a specific amount of time.").[6]  The Court will deny these motions because a reasonable trial continuance was granted for good cause and because defendant has waived his objections under the IAD.

### C.   Docket No. 113 - Motion to Set Deadlines

Defendant requests the Court set deadlines for his "pending motions."  Docket No. 113 at 2.  Other than the motions resolved by this order, the Court set deadlines for the United States to respond to all defendant's motions that were pending when defendant filed his motion.  Docket Nos. 101, 117, 118.  Accordingly, defendant's motion to set deadlines will be denied as moot.

---

[6] Even without this admission that defendant agreed to seek a trial continuance that would have moved the trial beyond the IAD deadlines, defendant's prior general invocation of the IAD would not be enough to prevent him from waiving his rights under the IAD by failing to raise the IAD specifically in his objection or at the hearing.  *United States v. Dowdell*, 595 F.3d 50, 64-65 (1st Cir. 2010) (holding that failure to raise IAD specifically in objecting to a continuance constituted waiver).

### D. Docket No. 116 - Motion to Adopt Stricken Pro Se Motions

Defendant requests that the Court "permit the adoption of all previously filed pro se motions." Docket No. 116 at 1. Defendant does not specifically identify which motions, but presumably refers to Docket Nos. 41-43, which were stricken as improper. Docket No. 44 (citing *Margheim*, 770 F.3d at 1316). The deadline for filing motions has not yet passed, which allows defendant to re-file these motions if the arguments have not already been ruled upon. *See* Docket No. 40 at 6, ¶ 2. Further, defendant has already filed motions very similar to two of these stricken motions. *Compare* Docket Nos. 41, 43 with Docket Nos. 55, 95. And the third stricken motion is mostly nonsensical. Docket No. 42 at 1 ("Delano Medina, in propria persona, sui juris, by special appearance, hereby asserts his Constitutional right to move the Court to allow Mr. Medina, as agent for the contract in this pending cause to unequivocally declare his ability to re-presentation of all matters in this bond and have rulings to provide relief in the nature of habeas corpus ad faciendum et recipiendum, ab initio, from day 7, February, 2017, nunc pro tunc, ad infinitum."). The Court will deny this motion.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Combined Motion for the United States to Specify What Discovery it Intends to Use at Trial and for the Defense to Be Provided with the Grand Jury Transcripts [Docket No. 98] is **DENIED**. It is further

**ORDERED** that defendant's Motion for Compliance with the Interstate Agreement on Detainers Act [Docket No. 100] is **DENIED**. It is further

**ORDERED** that defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 103] is **DENIED**.  It is further

**ORDERED** that defendant's Motion to Set Deadlines and for Updated Status on Previous Filed Motions [Docket No. 113] is **DENIED** as moot.  It is further

**ORDERED** that defendant's Motion to Adopt All Previous Filed Pro Se Motions [Docket No. 116] is **DENIED**.

DATED July 12, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge